# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD., | Civ. No. 2:16-CV-0098-RWS-RSP |
| Plaintiff, | |
| v. | |
| EBAY, INC. | |
| Defendant. | |

## DEFENDANT EBAY INC.'S MOTION FOR
## SUMMARY JUDGMENT OF INVALIDITY PURSUANT TO 35 U.S.C. §101

Plaintiff Global Equity Management (SA) Pty. Ltd. ("GEMSA") filed this suit against Defendant eBay, Inc. ("eBay") alleging, *inter alia*, infringement of U.S. Patent No. 6,690,400 (the "'400 patent").[1] Following claim construction, this Court issued its claim construction order (Dkt. 232), invalidating asserted claims 16 and 28 of the '400 patent. (*Id*., at p. 99). Thus, claim 1 of the '400 patent is the only remaining claim of this patent that GEMSA asserts against eBay.

Pursuant to Fed. R. Civ. P. 56, eBay now moves for summary judgment of invalidity of claim 1 of the '400 patent. For the reasons set forth below, there can be no genuine dispute of material fact that this claim fails to meet the requirements of patent eligibility under 35 U.S.C. § 101.

## I.   INTRODUCTION

Claim 1 of the '400 patent is directed to "a graphical user interface" ("GUI") that illustrates the partitioning of secondary storage devices and manipulation of multiple operating systems. The claim discloses the graphical display of generic computing elements, to allow users to visualize the allocation of a computer device's resources to multiple operating system environments that are partitioned on the computer device. Thus, claim 1 is simply directed to the visual display of information on a computer screen, which is nothing more than an abstract idea.

Further, claim 1 does not recite any of the underlying structures that are "illustrated" or "represented" in the claimed GUI, nor does it recite a particular manner for implementing the GUI beyond its display on a generic computer screen. Thus, this claim fails to include any element or combination of elements that would transform the graphical representation of an

---

[1] *See* Declaration of Bryan J. Sinclair In Support of eBay's Motion for Summary Judgment of Invalidity ("Sinclair Decl."), filed herewith, Exh. A.

abstract idea into patentable subject matter. As a result, claim 1 of the '400 patent is invalid as it fails to meet the requirements of patent eligibility under 35 U.S.C. § 101.

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment.

The question of whether a claim is directed to statutory subject matter is a question of law. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (*en banc*); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2010). As such, the issue of validity under 35 U.S.C. § 101 is readily amenable to summary judgment because the dispositive inquiry is what is claimed in the patent. *See, e.g., Bloomstein v. Paramount Pictures Corp.*, 215 F.3d 1351 (Fed. Cir. Sept. 3, 1999).

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994). *See also* Fed. R. Civ. P. 56(a). A motion for summary judgment should be granted where the "only plausible reading of the claims" is that they fail to recite patent-eligible subject matter. *Ultramercial v. Hulu,* 722 F.3d 1335, 1340 (Fed. Cir. 2013); *see also Dealertrack*, 674 F.3d at 1333 ("for abstractness to invalidate a claim it must exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act") (internal citations omitted).

### B. Patent Eligible Subject Matter Under 35 U.S.C. § 101.

Section 101 of the Patent Act states that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. If an alleged invention falls outside of the scope of these requirements, then it is not patent eligible. Within this context, "[l]aws of nature, natural

phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)).

The Supreme Court has set forth a two-part test for determining whether a claimed invention is eligible for patent protection under Section 101. To determine whether a claim is eligible for patent protection, the Court must "first determine whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. v. CLS Bank, Int'l*, 134 S. Ct. 2347, 2355 (2014). The Supreme Court has not established a definitive rule to determine what constitutes an "abstract idea" sufficient to identify a claim as directed to a patent-ineligible concept. *Alice*, 134 S. Ct. at 2357. This "directed to" inquiry does not simply ask whether the claims *involve* a patent-ineligible concept; rather, it applies a filter to the claims, considered in light of the specification, based on whether "their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Within this context, the question is not limited to whether the alleged invention is novel, but also whether the claim preempts the "building blocks" underlying a particular area of inquiry. *See Alice,* 134 S. Ct. at 2354 (if the patent claims sweep too broadly, or only claim the idea that was achieved rather than implementation of the idea, § 101 directs that the patent is invalid).

If they are, the Court must then "consider the elements of each claim both individually and 'as an order combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo,* 132 S. Ct. at 1297-98).

However, neither the Supreme Court nor the Federal Circuit has articulated a "single, succinct, usable definition or test" to identify whether an idea is "abstract." *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016). As a result, courts have

informed their determination of whether a claimed invention is "abstract" by examining prior cases in which the patented invention claims something similar. *See EMG Technology, LLC v. Etsy, Inc.*, Case No. 6:16-cv-00484-RWS-JDL, 2017 U.S. Dist. LEXIS 28805 (E.D. Tex. Jan. 27, 2017) (Report and Recommendation of Magistrate Judge); 2017 U.S. Dist. LEXIS 28593 (E.D. Tex. Mar. 1, 2017) (Order Adopting Report and Recommendation).

### III. CLAIM 1 OF THE '400 PATENT IS INELIGIBLE FOR PATENT PROTECTION.

#### A. Under the Court's Construction, Claim 1 is Directed to a Graphical User Interface That Visually Depicts the Organization of Computing Resources Among One or More Virtual Computer Environments.

Claim 1 of the '400 patent is an apparatus claim directed generally to a "graphical user interface," and recites:

> A *graphic user interface* for displaying means for allocating a computer device's resources to multiple operating system environments, partitioned on individual virtual cabinets, on said computer device, *said graphic user interface* comprising:
>
> > a main menu bar;
> >
> > a cabinet selection button bar;
> >
> > said cabinet selection button bar *graphically representing* at least one virtual cabinet;
> >
> > each said at least one virtual cabinet *representing* a discrete operating system;
> >
> > a secondary storage partitions window;
> >
> > a cabinet visible partition window;
> >
> > said secondary storage partitions window *graphically illustrating* at least one partition of at least one secondary storage device;
> >
> > said cabinet visible partition window *graphically illustrating* a cabinet record corresponding to a selected virtual cabinet on said cabinet selection button bar; and
> >
> > each said at least one cabinet visible partition window *representing* an operating system plus application software, databases and memory configured with said selected virtual cabinet.
>
> Sinclair Decl., Exh. A at 8:62-9:18 (emphasis added).

This Court construed certain language of this claim. (*See* Dkt. No. 232). First, the Court construed the preamble of claim 1 as non-limiting, finding that it "simply states the intended use of the invention." Dkt. No. 232 at 25. Second, the Court construed "cabinet selection button bar" as a "collection of user-selectable *graphical items*, each graphical item representing a virtual cabinet." *Id.* at 30 (emphasis added). Within this context, the Court described the "bars" of claim 1 as "collections of actionable *items* (*e.g.,* buttons and pull-down menus)." *Id.* at 30 (emphasis added). Third, the Court construed "secondary storage partitions window" as "[a] window that *depicts* secondary storage devices and that is configurable to *depict* their partitions." *Id.* at 39. Finally, the Court construed "cabinet visible partition window" as "[a] window that *depicts* one or more virtual cabinets and this is configurable to *depict* their files and partitions." *Id.* at 42.

In other words, under the Court's construction, claim 1 is clearly limited to a GUI that visually depicts the organization of computing resources amongst one or more virtual computer environments (*i.e.,* "cabinets") within a given computer. The limitations do not affirmatively recite the underlying structures that are visually depicted, nor do they describe the underlying structures that are "illustrate[d]" or "represent[ed]" by the graphical elements of the claim.

### B.     Claim 1 is Directed to An Abstract Idea.

Based on the Court's construction, there can be no doubt that claim 1 of the '400 patent is simply directed to a GUI. Other courts have found similar claims directed to graphical computing elements, without more, to be abstract (and therefore patent ineligible). *See, e.g., Affinity Labs of Tex., LLC v. Directv, LLC*, 109 F. Supp. 3d 916, 942 (W.D. Tex. 2016) (a "graphical user interface" is a generic computer component that "itself does not amount to an inventive concept."); *Cloud Satchel v. Amazon.com, Inc.*, 76 F. Supp. 3d 553 (D. Del. 2014)

(same; noting that plaintiff did not even address defendants' argument that "graphical user interface" is a generic computer component).

In *Apple, Inc. v. Ameranth, Inc.*, the Federal Circuit held that claims directed to "generating menus on a computer, or generating a second menu from a first menu and sending the second menu to another location" were patent ineligible abstract ideas. 842 F.3d 1229, 1240 (Fed. Cir. 2016). In *Amernath*, the abstract idea could be described as: (1) displaying information categorized in the form of menus on a graphical user interface; (2) selecting categories and items from a first menu; (3) generating a second menu; and (4) transmitting the second menu to a computing device or web page. *See Amernath*, 842 F.3d at 1234. The Federal Circuit concluded that the claimed system organizing information in a menu format is directed to an abstract idea. *See id.* at 1241. In making this determination, the Federal Circuit explained that the claimed invention was abstract because it did not "claim a particular way of programming or designing the software to create menus that have [the claimed] features, but instead merely claim the resulting systems." *Id*.

Applying *Amernath*, this District recently confirmed that "displaying information in a hierarchical tree format on a computer" is an abstract idea that does not qualify for patent protection. *Etsy*, 2017 U.S. Dist. LEXIS 28805, at *16-18. The asserted patents in the *Etsy* case were directed to systems and methods of (1) displaying information organized in the form a navigation matrix on a graphical user interface; (2) receiving information when a user makes a selection from a first layer of navigation matrix; (3) forwarding that information to a server to generate a second layer of navigation matrix; and (4) receiving the second layer of navigation matrix. *Id.*, at *2. While explaining that prior art user interfaces were more user-friendly than command line interfaces, the patentee claimed that they were "still too cumbersome and

require[d] too much specialized knowledge for many people to use effectively. There [were] too many protocols, too many standards, and too many methods for performing seemingly simple tasks." *Id*. at *3. The patent-in-suit purported to address this problem by providing "a simple user interface to navigate the Internet." *Id.* In *Etsy*, the court found that "displaying information in a hierarchical tree format to easily navigate information on the Internet, as claimed, is an abstract idea." *Id*.

The same reasoning applies here, as the claims are simply directed to visually displaying the organization of computing resources amongst one or more virtual computer environments (*i.e.,* "cabinets") within a given computer. As in *Etsy* and *Ameranth*, the GUI of claim 1 of the '400 patent is nothing more than an abstract idea.

Further, *Enfish* is inapposite here. While it is true that the claims here are similar to the claims in each of those cases in the sense that the claims involve a computer, the similarity ends there. In *Enfish, LLC v. Microsoft Corp.*, the Federal Circuit found the claims were not directed to an abstract idea because they were "directed to a specific improvement to the way computers operate." 822 F.3d 1327, 1336-37 (Fed. Cir. 2016). In particular, the claimed self-referential table for a computer database functioned differently than conventional database structures, which were technically inferior to the claimed invention. *Id*. at 1337. Importantly, the Federal Circuit explained that the claimed invention disclosed a "specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Id*. at 1339. By stark contrast, unlike the claims in *Enfish*, claim 1 of the '400 patent does not solve a computer specific problem, nor does it disclose a specific improvement in the way computers operate. Rather, the claimed invention broadly covers the display of four graphical elements ("main menu bar," "cabinet selection button bar," "secondary storage partitions window," and "cabinet visible

partition window") that "illustrate" or "represent" underlying computing elements. Nothing in the claim language suggests that it recites a technologically superior system compared to other ways of organizing and displaying information or a particular improvement to the functioning of the computer itself, like the data structure claimed in *Enfish,* which was a technical improvement over conventional database structures and improved "the way a computer stores and retrieves data in memory." *Enfish*, 822 F.3d at 1337-39.

### C. There Are No Additional Elements That Transform Claim 1 of the '400 Patent Into a Patent-Eligible Application.

The next inquiry in the Section 101 analysis is to determine whether additional elements of the claim transform it into patent-eligible subject matter. *Alice*, 134 S. Ct. at 2355 (if a claim is directed to an abstract idea, one must "consider the elements of [the] claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application"). Here, the answer is no.

"An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea in a computer." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016). Whether analyzing claim 1 alone, or this claim in conjunction with the '400 specification, the "inventive concept" inquiry fails to establish patentability in this case.

Claim 1 itself recites no claim elements, whether taken alone or in combination, that transform the claimed invention into something beyond a mere graphical user interface. Claim 1 does not recite structure designed to improve the way a computer operates, either in a single limitation or in the combination of recited elements in their entirety. This is unlike the claimed invention in *Enfish,* which was "directed to a specific improvement to the way computers

operate." 822 F.3d at 1336-37. In *Enfish*, the claim recited a self-referential table for a computer database that functioned different from conventional database structures, which were technically inferior—*i.e.,* the claimed invention disclosed a "specific type of data structure designed to improve the way a computer stores and retrieves data in memory." *Id.* at 1339. That is not the case here.

Claim 1 of the '400 patent does not recite *any* technology elements (*e.g.*, hardware components), let alone any *new* technology elements for displaying the recited "bar[s]" and "window[s]." Instead, as GEMSA argued during the claim construction process and, as the Court has construed the claim, there are no structural elements to this claim. To the extent that there is any structure in claim 1, it is found in the preamble—*i.e.*, "means for allocating a computer device's resources to multiple operating system environments, partitioned on individual virtual cabinets, on said computer device." Sinclair Decl., Exh. A at 8:62-66. But, as GEMSA argued at claim construction, and the Court agreed, the preamble of claim 1 is **not** a limitation. Dkt. 232 at 25 ("The preambles [of claims 1 and 16 of the '400 patent] are not limiting. The preamble simply states the intended use of the invention."); *see also* Dkt. 169 at 8, 14-15. Without the preamble, claim 1 recites nothing more than a number of graphical elements that "illustrat[e]" or "represent[]" computing elements, without any express requirement for underlying computing elements themselves. Sinclair Decl., Exh. A at 9:1-18 (reciting the limitations of claim 1, which represent and illustrate "virtual cabinet[s]," "partition[s]," "operating system[s]," "application[s]," "memory" and "databases" but do not affirmatively require any of the underlying represented structure).

Even if GEMSA now argues that claim 1 recites computer structure, that does not save claim 1 from invalidity. Again, the '400 patent discloses that the claimed GUI is designed using

standard tools for creating graphical user interfaces that were well known to those of skill in the art. Sinclair Decl., Exh. A at 3:13-17, 5:60-67; *id*., Exh. B at 108:10-110:24 (Transcript of the Deposition of GEMSA's Expert Dr. Craig Rosenberg, taken September 30, 2016); *see also* Dkt. 232 at 39:20-40:24. Additionally, the '400 specification references hard disk partitions, a "virtual table of contents," and standard power management and configuration tools that were all known in the art—*i.e.*, it recites a "generic computer implementation." But "generic computer implementation" does not "transform that abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2357. Here, there is no disclosure of an algorithm that was not otherwise known in the art, or new computer hardware or any inventive use thereof, that could support a finding that the specific GUI of claim 1 improves upon the known computer technology. As a result, claim 1 of the '400 patent fails to meet the second element of the *Mayo/Alice* test.

**D.    There are no Material Disputes as to the Scope of Claim 1.**

There can be no doubt that claim 1 is directed solely to the GUI itself, not tied to any specific technology or improvement to computers thereto. The specification of the '400 patent states that the "***invention*** [of the patent] is a ***Graphic User Interface*** (***GUI***) that enables a user to virtualize the system and to define secondary storage physical devices ***through the graphical depiction of cabinets***." Sinclair Decl., Exh. A at Abstract (emphasis added). The specification further discloses a number of prior art technologies that were available for use in creating the claimed GUI, irrespective of any underlying computer operations that may occur in response to manipulation of the graphical representations of the GUI. *See id.* at 3:13-17.

And the patentee stated during prosecution of the '400 patent that, "[a]s disclosed in the 'Background of the Invention,' this invention enables multiple operating and super operating systems to ***graphically depict*** the allocation of computer resources to one or more operating systems from the same or different software developers and select one or more of the existing

environments to boot and run on the computer." *See* Sinclair Decl., Exh. C ("Response to Office Action, dated Sept. 4, 2002") at 10 (emphasis added). The patentee also distinguished over the prior art by claim 1's "visual depiction" of certain design elements:

> Claim 1 includes a cabinet selection button bar and a cabinet visible partition window. These elements provide *visual depiction* of the virtual management of cabinets in the present invention.

Sinclair Decl., Exh. C at 12 (emphasis added).

Thus, the patentee consistently referred to his alleged invention as being a graphical user interface that provides a visual (or graphical) depiction of certain computing elements, without affirmatively reciting these computing elements themselves. *Id.* ("The prior art does not teach or suggest the [cabinet selection button bar and cabinet visible partition window] limitations these elements support in the current invention.").

GEMSA's own technical expert agrees:

> …I would say that the invention that seems to be disclosed [in the '400 patent] is the front end. *It's that graphical user interface to allow for a much more user friendly manipulation of your virtualization environment* as opposed to, let's say a command line interface, where you would have a command and many different options that would be far less intuitive and usable from a human factors perspective.

Sinclair Decl., Exh. B at 17:24-18:17. *See also id.,* at 16:7-22 ("…*I see the disclosure in this ['400] patent, and essentially the whole invention, around the graphical user interface, and not so much as the technical details of how virtualization is accomplished*"). (emphasis added).

Thus, there can be no genuine dispute of material fact as to the scope of claim 1: by the words of the patent, the inventor, and GEMSA's own expert, claim 1 merely recites a combination of graphical elements, created using known computing methods, that fails to recite any corresponding underlying structure.

## IV. CONCLUSION

For the reasons set forth above, claim 1 of the '400 patent is directed to an abstract idea and has no claim limitations, when analyzed individually or in combination with the remainder of the claim, that would transform this abstract idea into a patent-eligible invention. As such, claim 1 of the '400 patent fails to comply with the requirements of 35 U.S.C. § 101, and this Court should grant summary judgment of invalidity.

Dated: March 10, 2017

Respectfully submitted,

*/s/ Bryan J. Sinclair*
Bryan J. Sinclair, *pro hac vice*
California Bar No. 205885
bryan.sinclair@klgates.com
Audrey Lo, *pro hac vice*
California Bar No. 253738
audrey.lo@klgates.com
**K&L Gates LLP**
630 Hansen Way
Palo Alto, CA 94304
650.798.6700
650.798.6701 *Facsimile*

Benjamin Weed, *pro hac vice*
Illinois Bar No. 6294052
benjamin.weed@klgates.com
**K&L Gates LLP**
70 West Madison Street, Suite 3100
Chicago, IL 60602
312.372.1121
312.827.8000 *Facsimile*

*Attorneys for Defendant eBay Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 10, 2017, the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Bryan J. Sinclair*
Bryan J. Sinclair